1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The Honorable Benjamin H. Settle

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
TACOMA

RAQUEL MARTINEZ DIAZ, *et al.*,

Plaintiffs,

v.

UNITED STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT, *et al.*,

Defendants.

Case No.   3:18-cv-01356-BHS

DEFENDANTS' RESPONSE TO
PLAINTIFF'S MOTION FOR A
TEMPORARY RESTRAINING
ORDER

## I.   **INTRODUCTION**

Defendants United States Immigration and Customs Enforcement ("ICE"), Ronald
Vitiello in his official capacity, United States Department of Homeland Security, Kirstjen
Nielsen in her official capacity, Cynthina Munita in her official capacity, Bryan Wilcox in his
official capacity, and William Penaloza in his official capacity (the "Federal Defendants"), by
and through Annette L. Hayes, United States Attorney for the Western District of Washington,
and Priscilla T. Chan and Sarah K. Morehead, Assistant United States Attorneys for that district,
and hereby respond to Plaintiffs' motion for a temporary restraining order ("TRO").

//

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 1

**UNITED STATES ATTORNEY**
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## II.     FACTUAL BACKGROUND

This is not an emergent situation.  Plaintiffs are two unrelated aliens from different countries detained in the Northwest Detention Center ("NWDC") pending the completion of their immigration removal proceedings.

**A.     The Immigration Statuses of Ms. Martinez and Mr. Poliakov.**

Detainee Raquel Martinez Diaz ("Ms. Martinez"), is a native and citizen of Mexico, who entered the United States without inspection on an unknown date.  Declaration of Drew H. Bostock ("Bostock Decl.") at ¶ 10.  Ms. Martinez encountered Immigration and Customs Enforcement ("ICE") officials on March 31, 2018 in Ada County Jail in Boise, Idaho after her arrest for felony attempted strangulation and felony destruction of evidence.  Bostock Decl. at ¶ 10.  Ms. Martinez was subsequently convicted on August 16, 2018 of disturbing the peace and sentenced to 180 days in jail.  *Id*.  Ms. Martinez was transferred into the custody of ICE that same day, where she was issued a Notice to Appear ("NTA"), charging her with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), for being present in the United States without admission or parole.  *Id*. at ¶ 10.  Ms. Martinez's removal proceedings remain pending and she is scheduled for a bond hearing before an Immigration Judge on September 21, 2018.  *Id*. at ¶ 10.

Detainee Viacheslav Poliakov ("Mr. Poliakov"), is a native and citizen of Russia, who entered the United States at San Ysidro, California, without valid immigration documents on March 26, 2018.  Mr. Poliakov was transferred to the NWDC on April 3, 2018.  *Id*. at ¶ 17.  On April 25, 2018, ICE issued an NTA charging Mr. Poliakov with removability under Section 212(a)(7)(A)(i)(I) of the INA, for being present in the United States without a valid unexpired immigration visa or other valid entry document.  Bostock Decl. at ¶ 17.  Mr. Poliakov was

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 2

**UNITED STATES ATTORNEY**
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ordered removed from the United States on August 30, 2018.  *Id.*  He has until October 1, 2018, to appeal his removal order.  *Id.*  As of this filing, ICE has no record that Mr. Poliakov has appealed his removal order.  *Id.*

**B.     ICE's Hunger Strike Policy.**

ICE is tasked with removing aliens who lack lawful immigration status in the United States.  *Id.* at ¶ 3.  Detention is an important and necessary part of immigration enforcement. *Id.* ICE detains people for no other purpose than to secure their presence both for immigration proceedings and their removal, with a special focus on those who represent a risk to public safety, or for whom detention is mandatory by law.  *Id.*  Because ICE exercises significant authority when it detains people, ICE must do so in a humane manner, with a focus on providing sound conditions and care.  Conditions of detention at the NWDC are governed by the Performance-Based National Detention Standards 2011 ("PBNDS").  *Id* at ¶ 5.  The PBNDS reflects ICE's ongoing effort to tailor the conditions of immigration detention to its unique purpose while maintaining a safe and secure detention environment for detainees and staff.  *Id.*

The Northwest Detention Center ("NWDC") is a private detention center run by the GEO Group, Inc. ("GEO").  *Id.* at ¶ 4.  GEO is an independent contractor that provides the facility, management, personnel and services for 24-hour supervision of immigrant detainees in ICE custody at the NWDC.  *Id.*  GEO personnel are not employed by ICE.

ICE's hunger strike policies are grounded in the need for it to maintain the security and orderly operations within the facility, safeguard life, and preserve resources.  *Id* at ¶ 6.  If detainees are allowed to die or suffer permanent harm to themselves as a result of a hunger strike, other detainees will likely infer that ICE is indifferent to their well-being, thereby increasing the likelihood of disorderly conduct.  *Id.*

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Pursuant to the PBNDS, a "hunger strike," is a "voluntary fast undertaken as a means of protest of manipulation."  *See* PBNDS at 7.5, attached as Exhibit A to the Declaration of Priscilla T. Chan ("Chan Decl.").  Consequently, if a detainee is observed not to have eaten for 72 hours, ICE is required by protocol to refer the detainee for medical evaluation and monitoring.  Bostock Decl. at ¶ 7; PBNDS at 4.2, attached as Exhibit B to the Chan Decl.  In practice, an alien deemed to have missed nine consecutive meals is considered to be on a hunger strike.  Bostock Decl. at ¶ 7.

Meal distribution, security, and the general staffing of the housing units at the NWDC is handled by GEO officers.  *Id.* at ¶ 14.  Thus, although ICE's Enforcement and Removal Operation[1] ("ERO") officers at the NWDC visit detainee housing units about once a week or more, they are not responsible for and typically not present during mealtimes.  *Id.* at ¶¶ 13-14.  When GEO officers distribute meals, they are required to enter a detainee's name and alien registration number ("A-number") into the housing unit's log book whenever a detainee refuses a meal.  *Id.* at ¶ 15.

ICE's hunger strike protocols dictate that all facilities must notify the local ICE Field Office Director or his/her designee when an ICE detainee begins a hunger strike.  Bostock Decl. at ¶ 8; PBNDS 4.2(V)(B).  At the NWDC, Assistant Field Office Director ("AFOD"), Drew Bostock, is the designee of that hunger strike notification.  *Id.* at ¶ 8.

Once a detainee is deemed to meet the standard for being on a hunger strike, ICE initiates the hunger strike protocol in PBNDS 4.2, which sets forth a specific process for monitoring the detainee's food and liquid intake, providing medical monitoring and mental health assessments,

---

[1] ERO is the department within ICE responsible for identifying, apprehending, detaining and removing aliens from the country pursuant to legal authorization.

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 4

1  advising the detainee about the medical risks associated with refusing treatment, and using

2  "reasonable efforts to educate and encourage the detainee to accept treatment voluntarily."

3  Bostock Decl. at ¶ 9; PBNDS 4.2(V)(D), (E).

4      The ICE Health Services Corps ("IHSC") is the entity within ICE that provides direct

5  patient care to immigration detainees.  Its primary objective is to protect the health and well-

6  being of detainees.  Declaration of Dr. Sheri Malakhova ("Malakhova Decl."), at ¶ 27.  The

7  IHSC also has a hunger strike protocol consistent with the PBNDS but directed towards the

8  medical care and education of the detainee.  When the IHSC is notified by GEO or ICE that a

9  detainee has been refusing their food trays on a consistent basis and is not observed to be eating

10 other food such as from the commissary, that detainee is called to the medical clinic for an

11 interview with a nurse to determine whether the detainee intends to declare a hunger strike.

12 Malakhova Decl. at ¶ 3; *see also* IHSC Hunger Strike Policy, attached as Exhibit C to the Chan

13 Decl.

14     After a detainee has missed nine total meals under observation, he is evaluated by the

15 Clinical Director for a full health assessment.  *Id.* at ¶ 5.  The detainee is then transferred to a

16 single occupancy observation room in the medical housing unit ("MHU") at the NWDC so that

17 he can be medically monitored and his food and liquid intake and output can be accurately

18 observed.  PBNDS 4.2(V)(B); IHSC Hunger Strike Policy 4-3.  Because the process of

19 determining the levels of meal intake must be accurate, the detainee is restricted from accessing

20 the facility's commissary; however, meals and fluids are still presented to the detainee and there

21 is free access to water.  Malakhova Decl. at ¶ 4.  The nurse will report the meal monitoring status

22 to ICE, the Health Service Administrator ("HSA") HSA, and the Clinical Director.  *Id.*

23

24

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    All detainees declaring a hunger strike are assessed and treated by the IHSC on an

2    individual, case-by-case basis based on the medical factors pertinent to that specific detainee.  *Id.*

3    The mental health service is also notified to perform a mental health assessment.  *Id.*; IHSC

4    Hunger Strike Policy at 4-4.2.  At any time, the detainee may be referred to an outside medical

5    facility if there is a severe medical condition requiring medical services outside the scope of the

6    IHSC at NWDC.  *Id.*

7    The hunger striker has a right to refuse these monitoring procedures; however, the nurse

8    on duty will report their evaluations once every eight-hour shift in the electronic medical record

9    ("EMR"), and email the reports to ICE, the HSA and the Clinical Director.  *Id*. at ¶¶ 5-7.  The

10   Clinic Director counsels the detainee about the medical risks of a hunger strike and, if the

11   detainee refuses medical monitoring, his refusal is documented in writing.  *Id*. at ¶ 8; IHSC

12   Hunger Strike Policy at 4-4.3 and 4-6.  The IHSC's hunger strike monitoring continues until the

13   detainee consumes enough calories to meet his body's nutritional requirements, which are

14   typically at least two regular facility meals.  *Id*. at ¶ 11; IHSC Hunger Strike Policy at 4.9.

15   If the hunger strike leads to a weakened condition which threatens the patient's life or

16   long-term health, the Clinical Director will decide in her clinical judgment whether to

17   recommend involuntary monitoring, intravenous ("IV") hydration or involuntary feeding.  *Id*. at

18   ¶ 12.  If involuntary medical monitoring, hydration or feeding is required, the Clinical Director

19   will then notify the HSA, ICE, and the AFOD to support the request for a court order.  *Id*. at

20   ¶ 13.

21   //

22   //

23   //

24

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C.     ICE's Actions with Respect to Detainees.**

1.    Ms. Martinez.

Ms. Martinez has been housed in general population since her arrival at the NWDC on August 24, 2018.  Bostock Decl. at ¶ 11.  She has not been placed in medical isolation, administrative or disciplinary segregation at any time since then.  *Id.*  As such, ICE was unaware that Ms. Martinez considered herself to be on a hunger strike until the filing of the instant motion for temporary restraining order.  *Id.* at ¶ 12.  Specifically, Ms. Martinez did not contact ICE to announce that she was engaging in a hunger strike or in any form of protest.  *Id.* at ¶ 13.  The log book for Ms. Martinez's housing unit from August 25, 2018 through lunch on September 14, 2018, reflects that she informed GEO on September 2, 2018, of her intent to enter a hunger strike, but accepted both lunch and dinner that same day.  *Id.* at ¶ 15.  Thereafter, she refused no more than two meals on a single day but accepted meals thereafter.  *Id.* at ¶ 15.  Specifically, on September 13, 2018, Ms. Martinez refused breakfast and lunch but accepted dinner, and accepted both breakfast and lunch on September 14, 2018, the following day.  *Id.* at ¶ 15.

GEO has not reported to ICE that Ms. Martinez announced a hunger strike or missed nine consecutive meals.  *Id.* at ¶ 12.  Additionally, ICE is unaware of any conversations that Ms. Martinez claims to have had with unnamed GEO "guards" regarding refusal of meals or hunger striking.  *Id.* at ¶ 14.  In summary, there are no records that Ms. Martinez has missed nine consecutive meals; therefore, she does not meet the criteria of being on a hunger strike under the PBNDS.  *Id.* at ¶ 16.  Accordingly, ICE has not instituted any of the hunger strike protocols set forth in the PBNDS.  *Id.*; *see also* Malakhova Decl. at ¶¶ 14-16 (reflecting Ms. Martinez's knowledge of and access to healthcare at the IHSC and the lack of any indication to IHSC staff members of her intent to enter a hunger strike).

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       2.  Mr. Poliakov.

2       From April 2018 to August 22, 2018, Mr. Poliakov has visited the IHSC clinic on several

3   occasions, seeking treatment for complaints of chest pains, insomnia, nightmares, anxiety, and

4   stomach problems.  Malakhova Decl. at ¶¶ 17-25.  From his initial medical history and physical,

5   Mr. Poliakov denied taking prescription medications or being allergic to any food and medicine;

6   however, where warranted in the care that followed, his IHSC providers have examined him,

7   taken vital signs, performed lab tests, prescribed medications, counseled him on stress

8   management techniques, and placed him on a healthy diet.  *Id.*

9       On August 22, 2018, GEO and the IHSC informed ICE that Mr. Poliakov had declared a

10  hunger strike and started refusing meals.  Bostock Decl. at ¶ 18.  The reasons he provided for

11  being on a hunger strike was his dissatisfaction with the food, his insomnia and his difficulty in

12  retaining an attorney to prepare for his upcoming immigration court date.  Malakhova Decl. at

13  ¶ 22.  Mr. Poliakov was then placed in single cell housing for meal monitoring and thereafter

14  refused to eat, drink or take medication.  *Id.*  Mr. Poliakov was then monitored daily.  On August

15  24, 2018, Mr. Poliakov had an elevated heart rate and felt light-headed, but then felt better on

16  August 25th, after drinking water and taking a glucose supplement.  *Id.* at ¶ 23.  He was then

17  placed in the MHU and received IV fluids at his request on August 31st and two times in

18  September 2018.  *Id.* at ¶ 24.  Mr. Poliakov consented to further lab tests, urine output and vital

19  signs monitoring on September 7, 2018, and consented to drink electrolytes to reduce his

20  dehydration.  *Id.* at ¶ 25.  Mr. Poliakov continues to refuse food intake or end his hunger strike.

21  *Id.*  While Mr. Poliakov has been in the MHU, he has been afforded the use of the telephone, the

22  recreation yard, electronic tablets, the television and VCR.  *Id.* at ¶ 26.

23

24

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### III.   ANALYSIS

**A.   Standards for Granting a Temporary Restraining Order**

The purpose of a TRO is "preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing [on the preliminary injunction application], and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 94 S. Ct. 1113, 39 L. Ed. 2d 435 (1974); *see also Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130-31 (9th Cir. 2006).  To obtain a temporary restraining order or a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008).

**B.   Plaintiffs are Unlikely to Succeed on the Merits Against the Federal Defendants**

In order to grant preliminary relief, a district court must consider whether the moving party has shown a likelihood of success on the merits.  *Winter*, 129 S. Ct. at 374.  Plaintiffs are unlikely to succeed against the Federal Defendants because there has been no waiver of sovereign immunity as a whole and specifically for the actions of independent contractors, they have failed to state a claim for relief against Federal Defendants and they are not entitled to the injunction sought.  For these reasons, the TRO should be denied.

**1.   Plaintiffs Have Not Pled a Waiver of Sovereign Immunity**

The United States, as sovereign, is immune from suit unless it consents to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Cato v. United States*, 70 F.3d 1103, 1107 (9th Cir. 1995).  Any waiver of that immunity must be strictly construed in favor of the United

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

States. *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (1992); *Jerves v. United States*, 966 F.2d 517, 521 (9th Cir. 1992). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990). Moreover, it is the burden of any party advancing a claim against the United States to plead and prove that the court has jurisdiction to entertain the claim. *See Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983), *cert. denied*, 466 U.S. 958 (1984).

Additionally, federal district courts lack jurisdiction over suits against the United States unless the United States has expressly and unequivocally waived its sovereign immunity. *Balser v. Dep't of Justice, Office of U.S. Tr.*, 327 F.3d 903, 907 (9th Cir. 2003). Therefore, where the United States is the defendant, the plaintiff must show both subject matter jurisdiction and that the United States has waived its sovereign immunity. *Powelson v. United States, By and Through Sec'y of Treasury*, 150 F.3d 1103, 1104 (9th Cir. 1998) ("in an action against the United States, in addition to statutory authority granting subject matter jurisdiction, there must be a waiver of sovereign immunity.") (internal quotations and citations omitted)). In addition, a suit against a federal employee in his/her official capacity is a suit against the United States. *See, e.g., Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688-89, 69 S. Ct. 1457, 93 L. Ed. 1628 (1949); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). Therefore, regardless of whether Plaintiff have sued the United States or federal employees in their official capacities, they must plead and prove a waiver of sovereign immunity.

In this case, Plaintiffs have sued Federal Defendants in their official capacities, but they cite no legal authority to establish that defendants have waived sovereign immunity for their claims. Motion for TRO at 7. A constitutional claim does not itself constitute a waiver of sovereign immunity. *See, e.g., F.D.I.C. v. Meyer*, 510 U.S. 471, 484 (1994) (refusing to expand

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 10

**UNITED STATES ATTORNEY**
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

civil rights remedy for constitutional tort violations under *Bivens* to actions against federal agencies); *see also Arnsberg v. United States*, 757 F.2d 971, 980 (9th Cir. 1985) (no waiver of sovereign immunity for constitutional tort violations against the United States).  Neither of the statutes Plaintiffs cite provides a waiver of sovereign immunity.  Complaint (Dkt. #1) at ¶ 5 (citing 28 U.S.C. § 1331 and 28 U.S.C. § 2201, 2202); *see, e.g., Dunn & Black, P.S. v. United States*, 492 F.3d 1084, 1088 n.3 (9th Cir. 2007) (28 U.S.C. § 1331 grants subject matter jurisdiction but it does not waive sovereign immunity); *Cal. Shock Trauma Air Rescue v. State Compensation Ins. Fund*, 636 F.3d 538, 543 (9th Cir. 2011) (Section 2201 of the Declaratory Judgment Act is "procedural only"); *Brownell v. Ketcham Wire & Mfg.*, 211 F.2d 121, 128 (9th Cir. 1954) ("[T]he Declaratory Judgment Act . . . is not a consent of the United States to be sued, and merely grants an additional remedy in cases where jurisdiction already exists in the court.").  Because Plaintiffs have not articulated any basis for relief that would constitute a waiver of sovereign immunity to allow them to bring their claims against the Federal Defendants, the Court should dismiss this TRO for lack of subject matter jurisdiction.

### 2.    Plaintiffs Claim Harm By Employees of an Independent Contractor

Plaintiff Martinez claims in her Motion that unnamed "guards" at the NWDC threatened to obtain a force feed order against her and "write" her up to "hurt" her "immigration case[]" in retaliation for her refusal to eat.  Motion at 4.  However, to the extent her claims have merit, which Federal Defendants deny, all detention-related functions such as security and supervision, *i.e.,* "guard" functions, are delegated to GEO, an independent contractor not employed by ICE.  Bostock Decl. at ¶ 3.  Thus, although Ms. Martinez alleges wrongdoing by GEO guards, and to the extent Mr. Poliakov has alleged the same, Plaintiffs have failed to allege a legal theory allowing them to impute liability to the Federal Defendants for the actions of GEO employees.

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

To the contrary, the Federal Tort Claims Act ("FTCA") expressly prohibits the United States' liability for negligent actions by "any contractor with the United States."  28 U.S.C. § 2671 (emphasis added).  Therefore, "the federal government is not liable for torts committed by its contractors."  *United States v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1146 (9th Cir. 2004).  By logical extension of this statutory mandate, the federal government also "cannot be held vicariously liable for the negligence of an employee of an independent contractor." *Yanez v. United States*, 63 F.3d 870, 872 (9th Cir. 1995).  Although Plaintiffs have not alleged an FTCA claim, the statutory exemptions in the FTCA further highlight that the United States has not waived its sovereign immunity for actions by independent contractors or their employees. Plaintiffs have not alleged facts or a legal theory to hold the Federal Defendants liable for the actions of GEO employees.  Therefore, their allegations fail to state a claim against the Federal Defendants, and they are unlikely to succeed on the merits of their claim.

### 3.    Plaintiffs Have Failed to State a "Pattern and Practices" Claim against Federal Defendants.

Even if the Court finds that Plaintiffs have established a waiver of sovereign immunity, Plaintiffs have failed to state a "pattern and practices" claim with respect to ICE's management of hunger strikes.  Motion at p. 5.  First, as a matter of law, Plaintiffs may not assert a "pattern and practices" claim outside of a class-action.  *Ahuja v. Detica Inc.*, 742 F.Supp.2d 96, 110 (D.C. Cir. Sept. 30, 2010).  Second, a "pattern and practices" claim is not cognizable under the facts of this case because all detainees declaring a hunger strike are assessed and treated by the IHSC on an individual, case-by-case basis based on the medical factors pertinent to that specific detainee. Malakhova Decl. at ¶ 4.  Thus, ICE's actions with respect to each detainee case cannot be attributed to the entire detainee population.  For these reasons, Plaintiffs have failed to state a claim for relief under a "pattern and practices" claim.

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 12

**UNITED STATES ATTORNEY**
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**4.      Plaintiffs Are Not Entitled to the Injunction They Seek.**

2

Even if the Court were to find that Plaintiffs have established a waiver of sovereign

3

immunity, Plaintiffs have failed to show a likelihood of success on the merits because they are

4

not entitled to the relief sought.

5

a.      Plaintiffs' claims are unripe for review.

6

The Court lacks subject matter jurisdiction because Plaintiffs' claims are unripe for

7

review.  In determining whether a case is ripe for review, a court must consider whether the

8

matter is fit for judicial review and whether there would be hardship on the parties by

9

withholding court consideration.  *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).  Here,

10

Plaintiff Martinez's claim of retaliation is not fit for review because she is receiving and

11

accepting meals and does not meet the definition of a hunger striker.  *See generally*, Bostock

12

Decl. at ¶¶ 7-9, 13; Malakhova Decl. at ¶¶ 14-16.  Plaintiff, herself, admits eating bread on a

13

regular basis.  Motion at 3 ("[S]he has eaten only bread in order to take medications for back

14

pain.").  There would be no hardship to Ms. Martinez if the Court withheld any decision because

15

Ms. Martinez has not been designated a hunger striker and cannot yet say whether she will suffer

16

any hardship if review is delayed.  Furthermore, ICE has not requested an Order for Involuntary

17

Feeding.

18

Mr. Poliakov's case is also unripe for review because he is voluntarily accepting medical

19

monitoring and hydration and has been given access to the telephone, the recreation yard,

20

electronic tablets, the television and the VCR.  Furthermore, as with Ms. Martinez, ICE has not

21

requested an Order for Involuntary Feeding.  Malakhova Decl. at ¶¶ 22-26.  Accordingly, no

22

hardship would result from the Court denying his motion for a TRO in this case because he is not

23

being prevented from maintaining a hunger strike.  Jurisdiction is therefore lacking because

24

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 13

**UNITED STATES ATTORNEY**
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Plaintiffs' claims of First Amendment retaliation is unripe for review.  *City of Arcadia v. U.S.*

2    *Environmental Protection Agency*, 265 F. Supp. 2d 1142, 1156 ("Unripe claims are subject to

3    dismissal for lack of subject matter jurisdiction.").

4                    b.        Plaintiffs' are not entitled to such broad and vague relief.

5            Plaintiffs seek a TRO "prohibiting any further threat of forced feeding or solitary

6    confinement."  Motion at 24.  Plaintiffs' proposed order is even more broad and vague, asking

7    for the Court to prevent ICE from force feeding, transferring, taking adverse action or

8    threatening to force feed, transfer or take adverse action on the Plaintiffs "or other hunger

9    strikers" because they are "hunger striking or encouraging others to hunger strike."  Proposed

10   Order at Dkt. 4-1.  As a preliminary matter, ICE did not place Plaintiffs in solitary confinement

11   and Mr. Poliakov was placed in the MHU not for any putative reasons, but so that the IHSC

12   medical providers could monitor his health and well-being.  *See supra* at p. 8.  As for Plaintiffs'

13   request for a TRO prohibiting hunger strikes or threats of hunger strikes, Plaintiffs are not

14   entitled to such broad, vague relief.  Rather, injunctive relief must be "tailored to remedy the

15   specific harm alleged, and an overly broad preliminary injunction is an abuse of discretion."

16   *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991); *U.S. v. AMC*

17   *Entertainment, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008)("A trial court abuses its discretion by

18   fashioning an injunction which is overly broad.").

19            As explained above, ICE and the IHSC are required to follow a multi-stepped process

20   for managing hunger strikes at the NWDC, and this protocol requires the careful exercise of

21   judgment and discretion at each stage.  *See generally*, Bostock and Malakhova Declarations;

22   Exhibits A-C of the Chan Decl.  A blanket prohibition from seeking a force feed order for

23   Plaintiffs "or other hunger strikers," without regard to the particular circumstances and facts of

24

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER          **UNITED STATES ATTORNEY**
[Case No. 2:18-1356-BHS]- 14                                 700 Stewart Street, Suite 5220
                                                            Seattle, Washington 98101
                                                            (206) 553-7970

every case would greatly impair ICE and the IHSC's abilities to perform their functions and duties.

Plaintiffs' request for a TRO prohibiting ICE from "threatening" detainees in any manner is also too broad and vague to warrant relief.  Specifically, in a case in this circuit, a district court refused to issue an injunction barring defendants from "interfering with Plaintiffs' free speech rights" because "'obey the law' injunctions" are "not enforceable."  *Cuviello v. City of Oakland*, 2009 U.S. Dist. LEXIS 26067 (N.D. Cal. Mar. 19, 2009).  In reasoning equally applicable to this case, the *Cuviello* court explained that "obey the law" injunctions do not comply with Fed. R. Civ. P. 65(d), which requires that injunction orders "must 'be specific and definite enough to apprise those within its scope of the conduct that is being proscribed." *Id.* (quoting S.*C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240-41 (2d Cir. 2001); *see also* Fed. R. Civ. P. 65(d)(1) (requiring that an injunction order "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.").  In this case, the Court cannot, consistent with Fed. R. Civ. P. 65(d), grant Plaintiffs' vague and broad request to require Defendants to comply generally with the First Amendment.

      c.     ICE's policies and its actions further a legitimate institutional goal.

Even if the Court were to find merit to Plaintiffs' claims of retaliation, ICE and IHSC's adherence to its hunger strike protocols further legitimate institutional goals of maintaining orderly operations within the facility and preserving the health and well-being of its detainees. In *In re Soliman,* the court applied the Supreme Court's four-part test under *Turner v. Safley*, 482 U.S. 78, 84 (1987), to determine whether an immigration detainee's First Amendment rights were unconstitutionally violated by virtue of the force feed order issued against him during his hunger strike.  *In re Soliman*, 134 F.Supp.2d 1238 (N.D. Al. Feb. 15, 2001).  According to the

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 15

**UNITED STATES ATTORNEY**
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  *Turner* standard, there must first be "a valid, rational connection between the challenged practice

2  and the governmental interests put forward to justify it." *Id.* at 1253.  Second, "the court must

3  determine whether alternative means of exercising First Amendment rights to free expression

4  remain open to [the detainee]." *Id.*  Third, "the court must examine the extent to which

5  accommodation of [the detainee's] First Amendment right to engage in a hunger strike to protest

6  prison practices will have an impact on prison staff, inmates, and the allocation of prison

7  resources." *Id.*  Finally, "the court must determine whether force-feeding [the detainee]

8  represents an "exaggerated response" to penal concerns. *Id.* at 1254.

9       Although ICE has not requested force feed orders for either Ms. Martinez or Mr.

10  Poliakov, its concerns nevertheless satisfy the *Turner* standards for establishing that no First

11  Amendment rights were violated.  First, as the *Soliman* court found, ICE and IHSC have valid

12  reasons for operating the facility in an orderly manner and for preserving the health and well-

13  being of its inmates.  Second, Plaintiffs have access to telephones and counsel that allow them to

14  protest their detention by corresponding with the outside world.  Third, allowing either detainee

15  to sustain permanent harm to their health through a hunger strike would gravely impair ICE's

16  ability to fulfill its duties and functions.  As the *Soliman* court noted, "if Soliman is allowed to

17  die, other inmates will infer that the government is indifferent to their well-being, and that such a

18  result would likely incite disorderly conduct." *Id.* at 1253; *see also* Bostock Decl. at ¶ 6.  Fourth,

19  to the extent that placing Mr. Poliakov in the MHU burdens his First Amendment rights, it is not

20  an exaggerated response as the IHSC is required to monitor and maintain his health and well-

21  being.  For these reasons, Plaintiffs' constitutional rights have not been violated.  *See also In re*

22  *Fattah,* 2008 WL 2704541 (M.D. Penn. Jul 8, 2008) (First Amendment freedom to hunger strike

23  not abridged by force feed order based on satisfaction of *Turner* standard); *Grand Jury Subpoena*

24

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*John Doe v. United States*, 150 F.3d 170, 172 (2nd Cir. 1998) (force feed order issued against civil detainee on hunger strike did not violate constitutional rights where detention facility was responsible for his care, compelling governmental interests shown such as preservation of life, prevention of suicide and enforcement of prison security, order and discipline).  Based on the foregoing, Plaintiffs are not entitled to the relief sought, they are unlikely to succeed on the merits.

**C.      Plaintiff Is Unlikely to Suffer Irreparable Injury**

The Court must also consider the possibility of irreparable injury to plaintiff if the injunctive relief is not granted. *Winter*, 129 S. Ct. at 375.  Plaintiffs contend that they will suffer irreparable harm if ICE continues "threatening and retaliating against them for engaging in hunger strikes" and "if Defendants place Plaintiffs in solitary confinement."  Motion at 3-4.  However, other than their vague allegations of threats and retaliation, which are unsubstantiated, Plaintiffs have not alleged any on-going harm or interference with those rights. *Id.*  To the contrary, the harms they allege have no merit.  Specifically, Ms. Martinez is not deemed to be on a hunger strike, and ICE has not placed Mr. Poliakov in solitary confinement but has placed him in the MHU to monitor his health and well-being and where he has access to a telephone, the recreation yard, television and electronic tablets.  In fact, Mr. Poliakov's meal logbook reflects visits with his counsel on at least two occasions (September 8th and 9th, 2018), visits from the chaplain, and visits to use the phone. *See* Exhibits A and B of the Bostock Decl. at ¶ 22.  Also, as previously mentioned, Ms. Martinez is eating regularly and Mr. Poliakov has consented to medical monitoring and the intake of fluids and ICE has not requested force feed orders for either detainee.  Even so, any "threats" of adverse action such as, for example, involuntary medical monitoring, hydration or feeding, would require ICE to request a court order.  Such an

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

action would not be a punitive or disciplinary measure but rather, a necessary intervention so ICE can safeguard the health and well-being of its detainees.  Furthermore, courts in this District, including this Court, have granted such orders on at least six occasions.[2]  Accordingly, Plaintiffs have not shown a likelihood of irreparable injury absent an injunction.

**D.      The Balance of Hardships Does Not Tip in Plaintiff's Favor**

In considering a TRO, the Court must also consider whether the balance of equities tips in the favor of the moving party.  *Winter*, 129 S. Ct. at 375.  Here, it does not.  Specifically, ICE and the IHSC is responsible for protecting the health and well-being of all detainees.  If a detainee is allowed to die or severely compromise his health because of a hunger strike, "other inmates will infer that the government is indifferent to their well-being, and that such a result would likely incite disorderly conduct."  *In re Soliman*, 134 F.Supp.2d at 1253.  Consequently, the balance of equities tips in favor of protecting ICE's ability to carry out its mandated mission.

**E.      The Public Interest Does Not Weigh in Plaintiff's Favor**

Finally, in considering whether to grant a motion for TRO, the Court will consider the public's interest.  *Winter*, 129 S. Ct. at 375.  In an earlier Court of Appeals opinion in the *Winter* case, the Ninth Circuit reiterated the importance of this factor: "the district court must consider not only the possibility of irreparable harm, but also, in appropriate cases, the public interest. The public interest is not the same thing as hardship to [a] party . . . . Balance of hardships is the third factor, and the public interest is the fourth factor. They are separate. . . ." *Natural Resources Defense Council v. Winter*, 502 F.3d 859, 862 (9th Cir. 2007) (reversing the district court's order granting a preliminary injunction where the district court did not consider the public interest

---

[2] These cases are filed under seal due to the sensitive personal and medical information involved; however, upon request, they may be presented to the Court to be reviewed *in camera*.

factor).  Here, the "basic purpose" of immigration detention is "assuring the alien's presence at the moment of removal."  *Singh v.* Holder, 638 F.3d 1196, 1207 (9th Cir. 2011), *citing Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); Bostock Decl. at ¶ 3.  The public interest would not be served by allowing detainees to either die or medically deteriorate while detained.  Accordingly, an injunction would not satisfy this final prong of the test.

### IV.    CONCLUSION

For all of the foregoing reasons, the Federal Defendants respectfully request that the Court deny plaintiffs' motion for a temporary restraining order.

DATED this 17th day of September, 2018.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

s/ *Priscilla T. Chan*
PRISCILLA T. CHAN, WSBA #28533

s/ *Sarah K. Morehead*
SARAH K. MOREHEAD, WSBA #29680
Assistant United States Attorneys
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: (206) 553-7970
Email: Priscilla.Chan@usdoj.gov
Email: Sarah.Morehead@usdoj.gov

Attorneys for Federal Defendants

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 19

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Western District of Washington and is a person of such age and discretion as to be competent to serve papers;

It is further certified that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participant(s):

Y. Junga Subedar:          whatcomcivilrights@gmail.com

Edward S. Alexander:      Edward@ESALawoffice.com

I further certify that on this date, I mailed, by United States Postal Service, the foregoing to the following non-CM/ECF participant(s), addressed as follows:

-0-

DATED this 17th day of September, 2018.

_s/ Marciano Quinonez_
MARCIANO QUINONEZ, Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax:   206-553-4067
E-mail:  marciano.quinonez-cheeks@usdoj.gov

RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER
[Case No. 2:18-1356-BHS]- 20

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970